1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| UNITED NURSES OF CHILDREN'S HOSPITAL,<br><br>              Plaintiff,<br><br>   vs.<br><br>RADY CHILDREN'S HOSPITAL - SAN DIEGO,<br><br>              Defendant. | CASE NO. 09CV2633-MMA (CAB)<br><br>**ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL ARBITRATION**<br><br>[Doc. No. 17] |
|---|---|

Pending before the Court is Plaintiff United Nurses of Children's Hospital's ("UNOCH") Motion to Compel Arbitration. (Doc. No. 17.) On January 11, 2010, the Court held a hearing on the motion. (Doc. No. 31.) Attorney Adam Chaikin appeared on behalf of UNOCH, and Attorney Robert Stone appeared on behalf of Defendant Rady Children's Hospital - San Diego ("the Hospital"). Having considered the briefing and oral argument on the motion and for the reasons set forth herein, the Court hereby **GRANTS** UNOCH's Motion to Compel Arbitration.

### FACTUAL BACKGROUND

UNOCH represents the registered nurses and technical employees employed by the Hospital. The Registered Nurses bargaining unit ("RN Unit") works pursuant to terms and conditions set forth in the RN Collective Bargaining Agreement ("RN CBA"), which is effective through 2012. The Technical bargaining unit ("TU") works pursuant to terms and conditions set forth in the TU Collective Bargaining Agreement ("TU CBA"), which is effective through 2010. On September 23, 2009, Union and Hospital Representatives discussed the Hospital's desire to

implement a mandatory vaccination policy in anticipation of the H1N1 flu pandemic and upcoming flu season. The vaccination policy was also discussed at meetings attended by representatives from both parties on October 12, 2009 and October 21, 2009. On November 6, 2009, the Hospital announced in staff meetings that it had unilaterally implemented the mandatory flu vaccination policy for all employees. The policy provided that all employees hired on or after October 15, 2009 must obtain vaccinations for the regular flu and H1N1 flu as a condition of employment. Although the policy imposes the same requirement on employees hired prior to October 15, 2009, it permits employees to sign declination forms for a medical or other stated reason. Under the terms of the policy, however, declining employees are required to wear surgical masks and alternative name tags at all times.[1]

On November 6, 2009, pursuant to the CBAs' grievance procedures, the Union submitted grievances regarding the Hospital's implementation of the new vaccination policy. The Union identified four bases for the grievances: (1) the mandatory provision with no opt out violated employees' statutory rights under the California Health and Safety Code; (2) the Hospital's unilateral implementation of forced medical treatment without bargaining violated the CBAs; (3) distributing the policy without providing the Union with notice deprived the Union of its contracted right to meet and discuss the policy with Defendant; and (4) the policy for non-vaccinated nurses violated those nurses' privacy under California and Federal Law.

On November 9, 2009, the Hospital rejected the grievance, refused to arbitrate the grievance, and refused to stay implementation of the policy. On that day, the Hospital provided some union members with a copy of the written policy.

## PROCEDURAL BACKGROUND

On November 20, 2009, Plaintiff filed the instant action. On December 14, 2009, the Court denied the Union's motion for a preliminary injunction, declining to enjoin the Hospital from implementing the new flu vaccination policy on the basis that the Union had failed to demonstrate irreparable harm. Now pending before the Court is Plaintiff's motion to compel arbitration.

---

[1] Prior to the implementation of the policy, the Hospital required vaccinations only for those employees who provided direct patient care. Those who did not want to be vaccinated were required to fill out a declination form and wear a surgical mask.

Plaintiff asserts *inter alia* that the Hospital's unilateral implementation of the vaccination policy violated the terms of the CBAs, a dispute that is subject to arbitration under the mandatory arbitration clause.

## LEGAL STANDARD

In the context of a complaint to compel arbitration, the Court must consider whether there is a mandatory arbitration provision and whether the underlying dispute is arbitrable. As the Ninth Circuit has stated, "The first principle of the law of labor arbitration is that arbitration 'is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *LAWI/CSA Consolidators, Inc. v. Wholesale and Retail Food Distributors, Teamsters Local 63*, 849 F.2d 1236, 1238 (9th Cir. 1988) (quoting *United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960)). A dispute cannot be arbitrated if it is expressly excluded from arbitration under the terms of the CBA. *AT&T Technologies, Inc. v. Communications Workers of America*, 475 U.S. 643, 650–51 (1986). The Ninth Circuit has cautioned that: "The grievance is arbitrable 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.' Where there is no 'express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail.'" *Westinghouse Hanford Co. v. Hanford Atomic Metal Trades Council*, 940 F.2d 513, 518 (quoting *United Steelworkers v. Warrior & Gulf Co.*, 363 U.S. 574, 582–585 (1960)).

In determining whether arbitration should be compelled, "a court is not to rule on the potential merits of the underlying claims. Whether 'arguable' or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator." *AT&T Technologies, Inc.*, *supra*, 475 U.S. at 650. "The courts, therefore, have no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." *Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 568 (1960).

## DISCUSSION

The CBA[2] at issue here contains a mandatory arbitration provision for any grievance that is not satisfactorily settled as the result of informal or formal procedures set forth in the CBA. (*See* Section 606 of the CBA.) Specifically, Section 607 of the CBA provides the following explanation of the arbitrator's authority and decision:

> The Arbitrator shall have jurisdiction and authority only to interpret, apply or determine compliance with the express language of this Agreement and the agreed upon issue(s) submitted to him/her. The Arbitrator shall not have the power to add to, subtract from, or modify in any way the express language of this agreement. The Arbitrator shall have no authority to and shall not add to or modify in any way RCHSD's responsibilities or duties under this Agreement, nor may the Arbitrator impose upon RCHSD an obligation, responsibility or duty which is not expressly required of RCHSD by an express provision of this Agreement. . . .

As stated in the arbitration provision, however, the parties are only required to arbitrate grievances that are unresolved through the informal or formal procedures outlined in the CBA. Section 602 defines a grievance under the CBA as follows:

> Any complaint or dispute arising between a Registered Nurse and/or UNOCH and RCHSD concerning conduct by RCHSD alleged to be in violation of an express provision of this Agreement shall be resolved by the filing of a grievance in accordance with this Article.

In light of the foregoing, the Court is satisfied that the first prong of the inquiry is satisfied. Next, the Court must determine whether the particular dispute at issue here is one that must be arbitrated pursuant to the mandatory arbitration provision in the CBA.

The Union first asserts that the Hospital's unilateral implementation of the vaccination policy violates the Recognition Clause (Section 101 of the CBA), which provides that the Union is the sole and exclusive collective bargaining representative for all employees delineated in the CBA. Specifically, the Union contends that because the policy imposes a new condition on employment, the Hospital was obligated to bargain with the Union prior to implementing the vaccination policy.

The Hospital asserts that the policy was implemented pursuant to the Management Rights Clause (Section 1001 of the CBA), and as such did not impose a duty on the Hospital to bargain with the Union. Because the Hospital was not obligated to bargain over the implementation of the policy,

---

[2]Because the CBAs of the RN Unit and the TD Unit are identical, the Court shall refer to the relevant sections of the RN Unit CBA. The Court, however, shall indicate where the section numbers differ between the respective CBAs.

1  the Hospital contends that this dispute is expressly excluded from arbitration. The Union, however,
2  asserts that accepting the Hospital's position would be akin to deciding the merits of the underlying
3  dispute; that is, the Court would have to determine that the unilateral implementation of the policy was
4  a proper exercise of the Hospital's management rights.  The Union contends that without an express
5  provision in the CBA by which the Union waives its right to bargain over what essentially imposes
6  a new condition on its members' employment, the Court must find that the underlying dispute is
7  arbitrable.
8        The Management Rights Clause (Section 1001 of the CBA) states: "RCHSD retains all rights,
9  powers and authority that are not specifically abridged by an express provision of this agreement." The
10 section then goes on to outline various examples of management rights, including the rights "to
11 manage, direct and maintain the efficiency of its business and personnel; to determine the means and
12 manner by which patient care is to be delivered to patients, to direct the work force; . . . ." Finally, the
13 Clause states, "To the extent that any function of management is not expressly limited by this
14 Agreement, such function may be exercised unilaterally. RCHSD shall not be required to bargain with
15 UNOCH concerning its exercise of its management rights or the effect of its exercise of those rights
16 on the Bargaining Unit." The Section, however, provides: "Nothing in this Article X shall restrict
17 UNOCH or Bargaining Unit employees from filing grievances concerning the application or
18 interpretation of this Agreement nor consulting with RCHSD about the possible consequences of
19 management decisions that may affect Bargaining Unit employees."
20       Defendant asserts that the vaccination policy falls within its management rights because it was
21 implemented to protect "the health, safety, and well-being of [the Hospital's] patients, families and
22 staff and reduce the substantial and imminent likelihood of harm to" them. Plaintiff asserts that the
23 policy affects the terms and conditions of their members' employment, and is not an exercise of
24 Defendant's management rights. While the Hospital is correct that the management rights provision
25 allows the Hospital to unilaterally implement policies affecting patient care, that is not the entire
26 impact of the vaccination policy at issue here. Indeed, the policy subjects employees to a term of
27 employment with the hospital that did not exist before: either get vaccinated or wear a surgical mask
28 and alternative name tag. Even the written policy states that influenza immunization annually is "a

condition of hire and retention for all employees." (*See Bradley Decl. in support of Pl.'s Motion for TRO* [Doc. No. 7-8] at Ex. B.) Thus, whether the policy is a proper exercise of the Hospital's management rights is open to interpretation and best determined by an arbitrator. Indeed, as the management rights clause specifically provides: "Nothing in this Article X shall restrict UNOCH or Bargaining Unit employees from filing grievances concerning the application or interpretation of this Agreement . . . ." Because the Union is entitled to grieve the Hospital's application and interpretation of its management rights, and the union did just that by submitting a grievance pursuant to the procedure set forth in the CBA, the Court finds that the CBA covers the asserted dispute. *See United Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 581 (1960). The Court finds that this result is correct in light of at least one case where the Ninth Circuit upheld an arbitrator's decision that a hospital's unilateral implementation of a mandatory flu vaccination policy was not a proper exercise of the hospital's management rights. *See Va. Mason Hosp. v. Wash. State Nurses Ass'n*, 511 F.3d 908, 913 (9th Cir. 2007).[3]

Defendants contend that even if the Court finds that this dispute is a proper grievance subject to arbitration, Plaintiff waived its right to bargain over the vaccination policy in the Waiver Clause. The Waiver Clause (Section 2503 of the RN CBA, Section 2303 of the TU CBA) states:

> each [party] voluntarily and unqualifiedly waive[s] the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject, matter, or practice involving the terms and conditions of employment of the Bargaining Unit, other than as specifically required by an express provision of this Agreement.

In labor disputes over the terms of a CBA, the Ninth Circuit narrowly interprets waiver clauses such as the one at issue here. As the Ninth Circuit has stated, a union may waive a right during collective bargaining, but the waiver must generally be "clear and unmistakable." *American Distributing Co. v. NLRB*, 715 F.2d 446, 450 (9th Cir. 1983). As the Court in *American Distributing Co.* stated, "Waivers occur by express contractual provisions, by bargaining history, or by a combination of the two. . . . The bargaining history establishes relinquishment of a mandatory bargaining subject only if past

---

[3] The Court notes that while the Ninth Circuit did not specifically determine that the arbitrator's decision was correct in *Virginia Mason Hospital*, the Court did not find that the arbitrator's decision was error. The Court's citation of this case is not for the purpose of determining that the underlying dispute will ultimately be resolved in favor of the Union, but simply for the proposition that such a decision is within the realm of possibility.

negotiations reveal that the subject was 'fully discussed or consciously explored' and the Union 'consciously yielded' its interest in the matter.'" *Id.* (citations omitted).

Although the Hospital is correct that there is a very broad waiver clause in the CBA, there is no "clear and unmistakable" waiver of the right to bargain over the imposition of a vaccination policy which essentially adds a condition to the Union members' employment with the Hospital. The Court does not find this surprising in light of the fact that until the implementation of this policy, the Hospital did not make flu vaccination a condition of employment. Indeed, the impetus of the policy was to combat the spread of the H1N1 flu virus, which was not even in existence at the time the parties were negotiating the terms of the CBA. Having reviewed the policy, there is certainly no express waiver of the vaccination policy. Moreover, there is nothing before the Court that shows this subject was waived during negotiations. Therefore, the Court finds that the Union has not waived its right to bargain over the implementation of the vaccination policy. Accordingly, the Court hereby **GRANTS** the Union's Motion to Compel Arbitration to the extent that the Union asserts that the implementation of the vaccination policy is a dispute subject to arbitration.

The Union also contends that the Hospital's failure to provide the Union with written notice in advance of implementing the policy violated the Policy Changes Clause (Section 2504 of the RN CBA, Section 2304 of the TU CBA), and that it is entitled to arbitrate over the Hospital's violation of this provision. It is important to note that Plaintiff claims another aspect of the Hospital's conduct violated the CBA. The Policy Changes Clause requires that the Hospital provide the Union with a copy of any changes to the Hospital's written personnel policies that "affect the wages, hours and terms and conditions of employment for members." The Hospital admits that it did not follow this process, and instead chose to implement the policy prior to providing the Union with a written copy.[4]

---

[4]Indeed, at the hearing on the Union's motion for a preliminary injunction, the Hospital conceded that the Hospital's violation of the Policy Changes Clause could be arbitrated. (*See Hearing Tr.* [Doc. No. 27-1] at Ex. B, p. 18:12–19:8.) While the Hospital contends that these statements were for the purpose of demonstrating that even if there was a violation there was still no bargaining obligation, the Court does not find the Hospital's characterization accurate. (*Def.'s Opp.* [Doc. No. 24] at 9 n. 3.) At the hearing, the Hospital contended that the only issue that was arbitrable was the contractual violation of the Policy Changes Clause, and that because this was only a procedural violation, the Union was unable to demonstrate irreparable harm that would result if an injunction was not granted while the dispute was arbitrated. The Hospital cannot now change its position after succeeding on this argument during the preliminary injunction phase, in order to succeed in opposing the motion to compel arbitration. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) (holding

1  The Hospital, however, contends that the dispute over whether the Hospital complied with this Clause is not arbitrable because the Policy Changes Clause specifically provides that "this section [shall not] be construed as imposing any bargaining obligation on the Employer." While the Court agrees that this provision does not necessarily impose a bargaining obligation over the particular policy that is provided to the Union under the terms of this Clause, the Court finds that the Union should be able to file a grievance if the Hospital fails to comply with the bargained-for procedure for implementing policy changes. The Union urges the Court that any other outcome would essentially strip the Union of a bargained-for right because the Union would be left without any remedy when the Hospital violates the provision. The Court agrees. Although the Court is unsure what result can be attained by arbitrating this dispute, it is not the Court's duty to determine what potential remedies the Union may be entitled to in the event an arbitrator rules in its favor. *See AT&T Technologies*, *supra*, 475 U.S. at 649–50. Accordingly, the Court **GRANTS** the Union's motion to the extent the Union seeks to compel arbitration over the Hospital's compliance with the Policy Changes Clause.

Plaintiff also asserts that the vaccination policy violates various statutes, such as provisions of the Health & Safety Code and various privacy laws. The Union fails to offer any basis for its contention that these disputes are subject to arbitration. Moreover, at the hearing, the Union stated that it was not the Union's position that the alleged statutory violations in and of themselves imposed a duty on the Hospital to bargain over the terms of the policy with the Union. Accordingly, the arbitration shall be limited to determining whether the Hospital was obligated to bargain with the Union prior to implementing the new vaccination policy and whether the Hospital violated the Policy Changes Clause.

Finally, the Union requests that the Court order an expedited arbitration. The Union, however, concedes that the Court has no power other than its inherent power to order an expedited arbitration. Having considered the Union's request, the Court declines to order an expedited arbitration of the underlying disputes. As the Hospital readily points out, there is a detailed procedure set forth in the CBA that does not appear to provide either party with the means of compelling an expedited

---

that the rule of judicial estoppel generally prevents a party from prevailing in one phase of a case on an argument and then relying on a contradictory argument to prevail in another phase).

1  arbitration. If the Court finds that an enforceable agreement to arbitrate exists and that the agreement
2  encompasses the asserted dispute, the Court must enforce the arbitration agreement in accordance with
3  its terms. *See Chiron Corp. v. Ortho Diagnostic Systems, Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).
4  Accordingly, because the Court is limited to enforcing the terms of the CBA, the Court **DENIES** the
5  Union's request to compel an expedited arbitration of the underlying disputes.

## CONCLUSION

7  For the foregoing reasons, the Court hereby **GRANTS** Plaintiff's Motion to Compel
8  Arbitration. (Doc. No. 17.) This order disposes of all claims for relief. Accordingly, the Court
9  **ORDERS** the Clerk of Court to enter judgment in favor of Plaintiff and terminate this case

10  **IT IS SO ORDERED**.

11  DATED: January 15, 2010

*[signature]*

Hon. Michael M. Anello
United States District Judge